## Same Case on a Re-hearing.

*Ellis* was the creditor of *Fisher, Burgess & Co.* The firm of *King & Fisher* was the creditor of *Ellis.* The firms of *Fisher, Burgess & Co.* and *King & Fisher*, are in legal contemplation two distinct ideal persons. Up to the date of the plea of compensation, there was no assignment by K. & F. to F., B. & Co., or other act by which the ownership of the debt due by *Ellis* was divested out of the firm of *King & Fisher*, and became vested in F., B. & Co. Compensation did not take place by mere operation of law. By issuing executions on their respective judgments, the parties considered the debts as not compensated, by mere operation of law.

Should it be conceded that *King & Fisher* assented that *Fisher, Burgess & Co.*, of which firm they were partners, should treat the claim as their own, such assignment, resting only upon implication from the plea, must take date from the filing of the plea.

The notification of the assignment of the judgment by *Ellis* to *Milbank & Co.* having taking place before the filing of the plea, *Fisher, Burgess & Co.* have no right to plead in compensation against *Milbank & Co.*, a claim against *Ellis*, acquired after *Ellis* made his assignment.

The assignment to *Milbank & Co.*, although made with the understanding that they should credit *Ellis*, the transferer, with whatever they could collect, is not unlawful.

*Milbank & Co.* having previous to the assignment seized the judgment obtained by *Ellis* v. *F. B. & Co.*, and having caused it to be advertised for sale, the amicable transfer to prevent a sacrifice, does not constitute an unjust preference.

The mere fact that *Ellis* confessed judgment in favor of *Milbank & Co.*, is not conclusive, though it might be considered, with other circumstances, as an indication of fraud.

*Wheeler* was a member of the firm of *Wheeler & Ellis*, and was called on as a witness by *Stone* and F., B. & Co. to establish that the judgment due by *Wheeler & Ellis* had been extinguished, by a payment by *Ellis*, his partner. *Held:* That on the score of interest, he was not a competent witness.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Hunton & Bradford*, for plaintiff. *Rozier*, for defendant and appellant.

SLIDELL, C. J. This case is rendered difficult of examination by the complicated state of the facts to which the principles of law are to be applied.

There were two commercial firms, composed and domiciled thus: *King & Fisher*, of Missouri, composed of *H. S. King* and *W. P. Fisher*—*Fisher, Burgess & Co.* of New Orleans, composed of *W. P. Fisher*, *V. Burgess* and *H. S. King*.

On the 29th of January, 1850, *Ellis* obtained a judgment againt the firm of *Fisher, Burgess & Co.* and the three partners thereof. On the 11th February, 1850, *Ellis* assigned this judgment to *Milbank & Co.* On the 4th of June, 1850, due notice of this assignment was given to *Fisher, Burgess & Co.* This assignment was made after *Milbank & Co.*, upon execution of a judgment against *Ellis*, had seized the latter's judgment against *Fisher, Burgess & Co.*; and this amicable transfer seems to have been the result of a desire to prevent the expected sacrifice of the property by a Sheriff's sale. In November, 1850, the judgment in *Ellis* v. *Fisher, Burgess & Co.*, was affirmed on appeal. A writ of *fieri facias* was then issued, which was returned *nulla bona* in January, 1851; and then a rule, which is the matter of the present controversy, was taken by *Milbank & Co.*, as assignees, upon *Stone*, the surety in the appeal bond. In his answer, *Stone* denied the reality of the transfer; alleged that if a transfer had been made, it gave a fraudulent preference to *Milbank & Co.*, one of the creditors, and was prejudicial to *Fisher, Burgess & Co.* and their surety. He also pleaded that *Fisher, Burgess & Co.* had obtained a judgment against *Ellis*, and that the judgment held by the plaintiffs was extinguished by compensation. He also pleaded compensation. In this answer and plea, *the firm*

of *Fisher, Burgess & Co.* appeared by the same attorney, and joined the surety in his defence.

We have come to the conclusion, that compensation did not take place by *mere operation of law ;* because, so far as the evidence informs us, there was not that mutuality of indebtedness which is the indispensable basis of that legal fiction. *Ellis* was the creditor of *Fisher, Burgess & Co.* The firm of *King & Fisher* was the creditor of *Ellis. Fisher, Burgess & Co.* and *King & Fisher* are, in legal contemplation, two distinct ideal persons. Up to the date of the plea of compensation, there is no assignment by *King & Fisher* to *Fisher, Burgess & Co.*, or other act proved, by which the ownership of the debt due by *Ellis,* was divested out of the firm of *King & Fisher* and became vested in *Fisher, Burgess & Co.* It remained, for aught that appears to the contrary, an asset of the firm of *King & Fisher,* down to the time of filing the plea.

There is not then a case of compensation by mere operation of law, and it is natural here to observe, that the parties themselves considered the debts as not compensated. Their proceedings are in direct antagonism to such a theory, for they were both, as we have shown, striving to execute their respective judgments. It was only after the execution against *Ellis* was returned unsatisfied, that *Fisher, Burgess & Co.* took the ground of compensation by uniting in *Stone's* defence.

There being no compensation by mere operation of law, the question of compensation rests upon the *plea* of compensation.

Whether the plea of compensation is technically well made, is a point not free from difficulty ; for it is the plea of the firm of *Fisher, Burgess & Co.*, not of its individual members; and no assignment by *King & Fisher* to *Fisher, Burgess & Co.* is alleged in the plea. But let it be conceded that as *Fisher* and *King,* who composed the former firm, are partners of the latter, their assent that *Fisher, Burgess & Co.* should treat the claim as their own by pleading it in compensation, may be implied, and by consequence that an assignment of this partnership asset of *Fisher & King* to the partnership of *Fisher, Burgess & Co.*, may be implied; yet such assignment, resting only upon implication from the plea, must take date from the filing of the plea.

But the transfer to *Milbank & Co.* by *Ellis,* and the notification thereof, took place long before the filing of that plea. If therefore the assignment to *Milbank & Co.* was valid, *Fisher, Burgess & Co.* have no right to plead in compensation against *Milbank & Co.*, a claim against *Ellis* acquired after *Ellis* made his assignment. It seems to us, therefore, that it is indispensable to inquire into the validity of the assignment. If it was valid, the plea fails ; if invalid, then only can the plea be sustained.

The transfer made by *Ellis* to *Milbank,* seems not to have been an assignment in absolute payment of the debt, but an assignment with the understanding that *Milbank* should credit *Ellis* with whatever he could collect. There is nothing unlawful in such an assignment, and after it was notified to *Fisher, Burgess & Co.*, they could not acquire a set off available against their creditor's assignee.

It is said the assignment was made in fraud of creditors for the purpose of giving *Milbank & Co.* a preference. The District Judge has negatived this proposition, and we do not think the evidence authorizes a different conclusion. Before this assignment was made, *Milbank* had issued execution against *Ellis,*

ELLIS
v.
FISHER.

and had seized the judgment obtained by him against *Fisher, Burgess & Co. ;* it was advertised for sale, and to prevent a sacrifice, *Ellis* offered to make an amicable transfer, which *Milbank & Co.* accepted. The mere fact that *Ellis* confessed judgment in favor of *Milbank,* is not conclusive of fraud, though it might be considered in connection with other circumstances, as an *indicium.*

We think the witness, *Wheeler,* was properly rejected on the score of interest. The object of his testimony was to assist in establishing the defence, to wit, that the judgment debt due by *Wheeler & Ellis,* had been extinguished by a payment by *Ellis,* his partner. Now, if the defence were not sustained, he would remain liable *in solido* for the whole debt due to the judgment creditor, and would have to look to his partner for his contributive share. But if the defence should be sustained, he would be no longer liable to his judgment creditors and would be only left liable to his partner, *Ellis,* for contribution of one-half.

It is therefore decreed, that the judgment rendered by the Supreme Court be set aside, and that the judgment of the District Court be affirmed, with costs.